JANVIER, Judge.
This controversy results from an unusual automobile collision which occurred at about 5:45 o’clock in the late afternoon of September 15, 1954, on what is known as the Airline Highway at the western entrance to the parking lot of ,a large supermarket which is located on the north side of the highway about 150 feet east of the intersection of Labarre Road, in Jefferson Parish.
One of the cars involved was a Chevrolet which was owned and operated by Frank J. Vandrell, Jr., who had driven along the neutral ground in an easterly direction towards the City of New Orleans and had attempted to turn to his left through a gap in the neutral ground and to cross the other side of the highway and enter the parking space 'of the market. The other car was a Chrysler Imperial Sedan which was owned by National Service Corporation and was being operated by Joseph Vinson who was on his way out the highway in a westerly direction.
The highway is extremely wide, there being a neutral ground in the center and four traffic lanes on each side. The traffic, particularly on the north half of the highway, was extremely heavily congested, and it was obviously very difficult for Vandrell, who wished to turn to his left across that heavily congested side of the highway, to do so. When he reached the gap in the neutral ground which provided an opening through which he might turn to his left, he stopped because of the very heavy traffic on the other side of the highway. After waiting a short time, he thought that, although there were three lines of traffic in the three lanes nearest the neutral ground, since all of the traffic in those three lanes had come to a stop, he might thread his way through and enter the parking lot.
At that time all of the traffic in the three lanes on the north side of the highway had come to a stop because of a red traffic light which was at Labarre Road about 150 feet or so to the west and, as a result, as Van-drell attempted to pass through these three lines of cars there were some to his deft as well as some to his right. On the north side of the highway and nearest the curb there remained a fourth lane in .which, so far as he could see, there was no traffic approaching. He therefore turned to his left into a very narrow opening through the three lanes of traffic, and states that he had practically reached the parking lot when the car driven by Vinson, which'approached at a very high speed, crashed into the right side of his car causing the damage to the car and the physical injuries to Mrs.-Van-drell on which this suit is based. ■
Vandrell had secured from Emmco Insurance Company a policy of collision insurance under which that company had agreed to pay all but $50 of such amount as might be required to repair his car should it be-injured in collision, and Emmco Insurance Company, having paid all but $50 of that amount, joined with’ Mr. and Mrs. Vandrell in bringing this suit against Travelers Insurance Company, alleging that the accident had resulted from fault on the part of Vinson, an employee of National Service Corporation, that the said Travelers Insurance Company had issued to that corporation a policy of liability insurance and averring ■ that, as a result, the said Travelers Insurance Company was liable direct- : ly to anyone injured as a result of the negligent operation of the said Chrysler automobile.
*371 Vandrell prayed for judgment for $364 for losses sustained by him as head of the community of acquets and gains which existed between himself and his wife. Mrs. Vandrell prayed for judgment for $3,000 as compensation for her pain and suffering, and Emmco Insurance Company prayed for judgment for $162.41, representing that part of the cost of repairing the Vandrell car for which it was responsible under its collision insurance policy and which it had paid.
The Travelers Insurance Company answered denying that there had been any fault on the part of Vinson and, alleging that the collision had resulted solely from fault on the part of Vandrell, and then, alleging that it had issued to National Service Corporation a policy of collision insurance under which it had agreed to pay all but $100 of such amount as might be required to repair the car of said National Service Corporation, it averred that it had paid $233.63 as its share of repairing the cost of the Chrysler car and, assuming the position of plaintiff in reconvention, it prayed for judgment against Vandrell in the said sum, $233.63.
National Service Corporation intervened in the reconventional petition filed by the Travelers Insurance Company and prayed for judgment for $100 as that part of the cost of repairing its car which it had itself paid.
There was judgment dismissing the demand of Mr. and Mrs. Vandrell and of. Emmco Insurance Company and there was further judgment in favor of Travelers Insurance Company, plaintiff in reconvention, and against Frank J. Vandrell, Jr., in the sum of $233.63. The judgment made no mention of the claim of the intervener,. National Service Corporation, and accordingly it must be assumed that the intervention of that corporation was dismissed, and this is conceded by counsel for that corporation. And it is further conceded that that corporation did not appeal from the judgment and that therefore its claim may not be considered by us.
Vandrell appealed suspensively from the judgment in so far as it ran against him for $233.63, and he and Mrs. Vandrell and Emmco Insurance Company appealed devol-utively from the judgment in so far as it dismissed their respective claims against the Travelers Insurance Company.
Though the respective subrogations do not appear in the record as it is now made up and though there is no proof in the record as to the cost of repairing the two cars, it is conceded that the necessary sub-rogations were actually secured, and it is further conceded that the cost of repairing the Vandrell car was $212.41 and that the cost of repairing the Chrysler car of National Service Corporation was $333.63.
It is the contention of plaintiffs, Mr. and Mrs. Vandrell and Emmco Insurance Company, that as Vandrell at a slow speed turned to his left and attempted to make his way through the gap in the neutral ground and then to thread his way through the narrow partially open lane between the three lines of stationary cars, the drivers of some of those cars which were to his right realized his predicament and backed their cars slightly so that he might be afforded a lane of sufficient width to permit the passage of his Chevrolet and that after he had passed successfully through the three lanes of traffic and had looked to his right and had seen ■ no car approaching in the fourth lane, he almost completed the crossing of that fourth lane when the car driven by Vinson approached at an excessive speed and turning to its right toward the parking lot, crashed into his car.
On the other hand, Vinson says that as he approached in the open fourth lane, he saw that all traffic in the three lanes to his left was stopped — apparently by the unfavorable traffic light about 150 feet ahead— and that since the lane in which he was driving was open except for a truck which he was following, he continued in that open lane at a speed of between 30 and 35 miles an hour without the slightest intimation or reason to anticipate that Vandrell would attempt to cross through the three lines of stationary cars.
*372 Vinson says that he had no intention of turning to his right into the parking lot but intended to continue for a distance of an additional ISO feet and to turn to his right into Labarre Road at the traffic light. There is nothing to indicate that the speed of Vinson’s car was excessive. He says that that speed was about 30 or 35 miles an hour and there is nothing to show that he was incorrect in stating that the speed limit at that point was 40 miles per hour. There was no reason for him to anticipate that some other car would attempt to cross-through the extremely congested traffic at that point. Though there was a gap in the neutral ground, that gap was not opposite an intersecting street.
'Nor is there any substantial corroboration of the statement of Vandrell that some of the cars backed in order to let him through and that this should have been noticed by Vinson who was approaching in the open lane.
As a matter of fact if one or two of the cars found it necessary to back in order to let Vandrell through, it is obvious that as Vinson approached there was not open a sufficiently wide lane for him to notice that it was possible for traffic to pass across and thread its way through the lines of stationary cars.
Vandrell admits that he did not see the Vinson car as he entered the open fourth lane of traffic. He was asked when he first saw the Vinson car approaching and he said: “Right when it hit,” and asked why he had not seen it before, he answered: “He just wasn’t there.” Surely the Vinson car was there and was approaching at reasonable, speed. The record makes it very clear that the lane in which it was approaching was clear and that traffic in it was proceeding forward at reasonable speed.
We ourselves have" considered on three occasions situations which were remarkably similar to that which is found here, and it is necessary to comment on those three cases because in each" of them we reached a conclusion which may seem to be different from that which we have reached in this case. In each there was-one ' distinguishing fact which completely justifies the conclusion which we háve reached in this case. Those three cases are: Schroeder v. Mounes, La.App., 52 So.2d 67; Indovina v. Logrande, La.App., 70 So.2d 456 and Floyd v. Roberts, La.App., 72 So.2d 18. In each the situation was remarkably similar to that found here. In each there were stationary lines of traffic and there was a car, the driver of, which, attempted to thread his way through those stationary lines of traffic, and in each we held that there was negligence on the part of the driver who attempted to pass through a clear lane alongside and parallel to the stationary lines of traffic. The distinguish-, ing fact in each case was that the car crossing through the stationary lines of traffic was on an intersecting street and in each of those cases we felt that the driver of the ca,r passing alongside the stationary cars and attempting to cross' an intersecting street should have noticed that there was an open lane across the lines of stationary, cars through which any car on the intersecting street might be expected to pass across and through the lines of stationary cars. Here that situation did not exist and there was nothing to cause Vinson to anticipate that Vandrell might attempt to cross directly in front of traffic approaching in the open lane.
Since we find no negligence on the part of Vinson, the judgment appealed from is affirmed at the cost of appellants.
Affirmed.